## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

STATE OF NORTH DAKOTA
EX REL. WAYNE STENEHJEM,
ATTORNEY GENERAL,

                                              Civil No. 1:08-cv-002

                              Petitioner,

**STATE OF NORTH DAKOTA'S
BRIEF IN SUPPORT OF
MOTION FOR FED.R.CIV.P. 11
AND 28 U.S.C. § 1927 SANCTIONS**

        -vs-

SIMPLE.NET, INC.
F/K/A DIAL UP SERVICES, INC.
DBA SIMPLE.NET,

                              Respondent.                    CPAT 050029.003

        Petitioner, State of North Dakota ("North Dakota") offers the following in support of

its Motion for Fed.R.Civ.P. 11 and 28 U.S.C. § 1927 Sanctions against Simple.net, Inc.

("Respondent") and its counsel, Peter Strojnik ("Strojnik").   A copy of State of North

Dakota's Notice Pursuant to Fed.R.Civ.P. 11(c)(1)(A), served on Respondent's counsel on

January 22, 2008, is filed herewith as Attachment 1 and incorporated by reference.

### **FACTS**

        Respondent, Simple.net, Inc., is an Arizona corporation, which claims to provide

back-up mobile internet access to customers for a fee of $19.95 per month.

Respondent's marketing method involved the mailing of a "live activation" or

"promotional" check to potential customers.[1]   Some time before 2001, Federal Trade

Commission ("FTC"), started investigating Respondent and its marketing practices.

---

[1]The negotiation or the deposit of the check supposedly signified the recipient's acceptance of
Respondent's internet services; if the check was cashed, the customer was charged $19.95 per month
either by billing through a local utility bill, by charge to the customer's bank account where the check was
cashed, by charge to the customer's credit card or by invoice.   In these types of schemes, many
consumers are not aware that they are being charged.   Respondent refuses, among other things, to
identify its North Dakota customers.

FTC commenced an action against Respondent, then known as Dial Up Services, Inc., in the United States District Court, District of Arizona, which resulted in a stipulated Final Judgment between FTC and Respondent on July 26, 2001 ("FTC Consent Judgment").   Since then, several States, including North Dakota, have started investigations of Respondent for violations of State laws.    As part of these investigations, some States issued Civil Investigative Demands.

The above-captioned action was commenced on February 6, 2007, in North Dakota District Court, South Central Judicial District ("State District Court"), Case No. 07-C-292, by North Dakota filing a Motion to Compel answers to a Civil Investigative Demand, which had been issued on November 30, 2006. Respondent has never responded to the Civil Investigative Demand.

Respondent also did not respond to North Dakota's Motion to Compel.  The State District Court granted an injunction and issued an Order Granting Motion to Compel on February 27, 2007.  Respondent made no attempt to comply with the Order to Compel. Instead, on February 22, 2007, Respondent filed an action in the United States District Court, District of Arizona, against the State of North Dakota, the State of Idaho, the State of Oregon, the State of Missouri, the Honorable David E. Reich, Judge of the South Central Judicial District of the State of North Dakota and the Honorable Kathryn Sticklen, Judge of the Fourth Judicial District of the State of Idaho, seeking declaratory relief preventing the named defendants from proceeding with the law enforcement investigations.  Respondent subsequently filed a March 6, 2007, Verified Application for a Temporary Restraining Order. Rather than answering the Complaint, the defendants moved to dismiss the action on April 13, 2007. The Honorable David Reich moved for Rule

11 sanctions against Respondent and its counsel on May 17, 2007.  North Dakota filed a Motion for Rule 11 and 28 U.S.C. § 1927 sanctions on May 18, 2007.  The State of Idaho filed a similar Motion for sanctions on May 21, 2007. On November 26, 2007, the Arizona court dismissed Respondent's action for lack of personal jurisdiction.  The Court did not reach the merits of the other grounds for dismissal.  The Court denied the Motions for sanctions.[2]  A Judgment dismissing the action was entered on November 27, 2007.  On December 10, 2007, Respondent filed an appeal with the United States Court of Appeals for the Ninth Circuit, Appeal No. 07-17312.

North Dakota proceeded with the Burleigh County action and filed a Motion for Order to Show Cause on December 4, 2007.  A Second Amended Order to Show Cause was entered in the State District Court on December 19, 2007.  The hearing is scheduled for January 31, 2008.

On January 7, 2008, Respondent removed this action to the United States District Court.  Respondent concurrently filed Respondent's Response in Opposition to Petition for Order to Show Cause, and attempted to file a "Verified Complaint" with this Court under the same civil number.[3]  On January 14, 2007, the Respondent electronically filed Respondent's Response in Opposition to Petition for Order to Show Cause and Memorandum.  On January 15, 2008, the Respondent filed Notice of Error in Filing Alternatively Motion for Leave to File Verified Complaint, again attempting to incorrectly file

---

[2] Because of the dismissal for lack of personal jurisdiction, the Arizona Court never reached the merits of issues that various states contend supported their motion for Rule 11 and 28 U.S.C. § 1927 sanctions.  The motions for sanctions were denied without any analysis of those issues.

[3] This "Verified Complaint" appears to be filed as an Exhibit to the Notice of Removal to U.S. District Court. It is North Dakota's position that the "Verified Complaint" is not a part of this action, nor does it commence any independent or separate action.  There is no authority for filing a "Verified Complaint" in response to an order to show cause.  It should be stricken from the record.  This "Verified Complaint" also names, as defendant, "District Court of the State of North Dakota, South Central Judicial District," which is not party to the underlying action. No party has been properly served with the "Verified Complaint."  Respondent's "Verified Complaint" is a nullity.

its Verified Complaint as part of the pending matter.  Strojnik admitted that there is no authority for this filing when he tried to re-file the Verified Complaint and stated that Court personnel told him his filing was not allowed.  <u>See</u> Notice of Error in Filing Alternatively Motion for Leave to File Verified Complaint at 2.

## <u>AUTHORITY</u>

Pursuant to Fed. R. Civ. P. 11(b), by presenting a pleading to the Court "an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that the pleading "is not being presented for any improper purpose," that the claims "are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law," and that "the allegations and other factual contentions have evidentiary support . ..." Fed. R. Civ. P. 11(b)(1-3).

Under Rule 11, there are basically three types of submitted papers which warrant sanctions:  factually frivolous (where contentions lack "evidentiary support" or denials are not "warranted on the evidence"); legally frivolous (not "warranted by existing law or by a nonfrivolous argument for the extending, modifying, or reversing existing law or for establishing new law"); and papers interposed for an improper purpose. Fed. R. Civ. P. 11(b)(1-4); <u>See e.g.</u> <u>Business Guides, Inc. v. Chromatic Comm. Enters.</u>, 892 F.2d 802, 808 (9th Cir. 1989), <u>aff'd</u> 498 U.S. 533 (1991).  If a pleading is signed in violation of Rule 11, the Court, upon motion or upon its own initiative, may impose an appropriate sanction. Fed.R.Civ.P. 11(c).

Rule 11 requires an attorney to conduct a reasonable inquiry of the factual and legal basis for a claim before filing.  The District Court must determine "whether a reasonable and competent attorney would believe in the merit of an argument." <u>Coonts v. Potts</u>, 316 F.3d 745, 753 (8th Cir. 2003).

In determining whether a violation of Rule 11 has occurred, courts must look at whether the pleadings were frivolous, unreasonable, without foundation, or instituted for oppressive reasons. Bass v. Southwestern Bell Tele., Inc., 817 F.2d 44, 46 (8th Cir. 1987). The courts apply an "objective reasonableness" standard when making this determination. See Pulaski County Republican Comm. v. Pulaski County Bd. of Election Com'rs, 956 F.2d 172, 173 (8th Cir. 1992); Miller v. Bittner, 985 F. 2d 935, 938 (8th Cir. 1993).

"Rule 11 sanctions are specifically designed to deter baseless filings and frivolous litigation, to unclog the choked dockets of the federal courts, and to punish improper conduct by lawyers and litigants." Schutts v. Bently Nevada Corp., 966 F. Supp. 1549, 1566 (D. Nev. 1997).

"Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927; See also Clark v. United Parcel Serv., Inc., 460 F.3d 1004, 1011 (8th Cir. 1006)("[a] court may require counsel to satisfy personally attorneys' fees reasonably incurred by an opposing party when counsel's conduct "multiplies the proceedings in any case unreasonably and vexatiously").

## ARGUMENT

### I.    RESPONDENT'S VERIFIED COMPLAINT AND REMOVAL IS PRESENTED FOR IMPROPER PURPOSES.  FED.R.CIV.P. 11(b)(1).

Respondent's Removal to the United States District Court and Respondent's Verified Complaint have been presented for an improper purpose, specifically, (1) to improperly interfere with, delay and obstruct the North Dakota Attorney General's law-enforcement investigation of Respondent's possible illegal and fraudulent activities in North Dakota; (2) to improperly interfere with, delay and obstruct the contempt hearing

scheduled in this matter; (3) to intimidate other States and prevent them from going forward with their own investigations; and (4) to attempt to improperly influence or force a multistate settlement of other States' claims against Respondent.  Fed.R.Civ.P. 11(b)(1).

Respondent's Removal to the United States District Court and its Verified Complaint, which lack any reasonable basis in law or in fact, do not serve any legitimate purpose.  There is no jurisdictional basis for removal.  This is a dispute between a sovereign entity, the State of North Dakota, and a corporation being investigated under State law for violation of State law.  The case involves the issue of compelling the Respondent to comply with and cooperate with the Attorney General's investigation into their business practices.  The removal cannot possibly succeed and is simply an attempt to buy time to allow Respondent to continue its conduct as long as possible and to prevent the States from engaging in discovery to determine the nature and scope of Respondent's conduct.

Respondent's attempted filing of the Verified Complaint lacks any reasonable basis in law or in fact and cannot possibly succeed.  The Verified Complaint is brought for an improper purpose, merely as an attempt to stall, to excuse non-compliance and to influence multi-state settlement negotiations.   As the States began closing in on Respondent and North Dakota began forcing the issue of Respondent's failure to cooperate with North Dakota's investigation and its failure to comply with the State District Court's express Order, Respondent's counsel reacted by attempting to bring yet another groundless "lawsuit," now in this Court.

## II.   RESPONDENT'S NOTICE OF REMOVAL IS NOT WARRANTED BY EXISTING LAW OR BY A NONFRIVOLOUS ARGUMENT FOR THE EXTENSION OF THE LAW.  FED.R.CIV.P. 11(b)(2).

Removal of the current action is not warranted by existing law.  The U.S. District Court simply does not have jurisdiction.  28 U.S.C. § 1441 identifies what kind of cases can be removed.  Respondent asserts that it "is entitled to removal of this action pursuant to 28 U.S.C. § 1441(a) and (b), nonexclusively…."  28 U.S.C. §1441(a) and (b) read as follow:

> (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

> (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

Removal is not permissible where the federal court lacks subject matter jurisdiction over the issue raised in the action.  North Dakota's action does not involve any claims which fall within the original subject matter jurisdiction of the federal court as required in 28 U.S.C. § 1441(a) and (b).  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c). Here, there is no jurisdiction based on diversity in citizenship because the State of North Dakota is not a citizen.  See 28 U.S.C. § 1332.  There is also no jurisdiction based on federal question because this action is merely an action to compel compliance with discovery requests, which is a State-law question and does not involve federal law.  See 28 U.S.C. § 1331.  No other possible grounds exist.

Respondent may argue a federal question exists based on its proposed defense(s) asserted in its Response in Opposition to Petition for Order to Show Cause or the Verified Complaint.  However, a federal question raised in a responsive pleading does not create federal question jurisdiction.  Brough v. United Steelworkers of America, AFL-CIO, 437 F.2d 748 (1st Cir. 1971).  It is well-established law that a federal court's jurisdiction cannot be founded on anticipated defenses or responsive pleadings.  Gaming World Intern., Ltd. v. White Earth Band of Chippewa Indians, 317 F.3d 840 (8th Cir. 2003).  Thus, the fact that the Respondent's Opposition to the Petition for Order to Show Cause or the Verified Complaint could theoretically raise issues involving federal law is immaterial and insufficient to create grounds for removal.

Respondent failed to establish any grounds for removal.  Respondent never identified a factual or legal basis for its claim the Court has original jurisdiction.  See generally 28 U.S.C. §§ 1330-1334.  Under 28 U.S.C. § 1446(a), Respondent must file a notice of removal "containing a short and plain statement of the grounds for removal."  Respondent's Notice of Removal contains no statement of the grounds for removal and merely recites the language of 28 U.S.C. § 1441.  This is insufficient to establish federal jurisdiction.  Respondent, as the party seeking to invoke the jurisdiction of the federal court by way of removal, has the burden of establishing that action arises under federal law. See e.g. Carson v. Dunham, 121 U.S. 421 (1887).[4]  Respondent has not even attempted to

---

[4]  See also Ahearn v. Charter Township of Bloomfield, 100 F.3d 451, 453-54 (6th Cir. 1996)("Removing defendants bear the burden of establishing federal subject-matter jurisdiction"); Rievley ex rel. Rievley v. Blue Cross Blue Shield of Tennessee, 69 F. Supp. 2d 1028, 1031 (E.D. Tenn. 1999)("The defendants who removed the case and are seeking to invoke this Court's subject matter jurisdiction have the burden to establish that the instant action arises under federal law"); Beacon Moving & Storage, Inc. v. Local 814, Intern. Broth. of Teamsters, 362 F. Supp. 442 (S.D. N.Y. 1972); Schultz v. Coral Gables Federal Sav. & Loan Ass'n, 505 F. Supp. 1003, 1008 (D.C. Fla. 1981)("the party seeking removal bears the burden of satisfying each of these preconditions").

show the instant action involves a federal question.  Respondent has failed to set forth a single argument in support of a right to removal.

Alternatively, the removal was not timely.  Respondent removed the case nearly a year after the initial pleadings were served.  Under 28 U.S.C. § 1446, "[t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based…"  28 U.S.C. § 1446(b). Respondent's removal was untimely and not warranted by law.

III.    **RESPONDENT'S CLAIMS IN THE VERIFIED COMPLAINT ARE NOT WARRANTED BY EXISTING LAW OR BY A NONFRIVOLOUS ARGUMENT FOR THE EXTENSION OF THE LAW AND RESPONDENT'S ALLEGATIONS AND OTHER FACTUAL CONTENTIONS LACK EVIDENTIARY SUPPORT. FED.R.CIV.P. 11(b)(2) AND (3).**

Respondent's attempt to file a verified Complaint in this matter is frivolous, unwarranted and supported by nothing but fictitious "facts".

The attempt to file a Verified Complaint as part of this action is in itself unwarranted and frivolous.  As admitted by Strojnik in Respondent's Notice of Error in Filing Alternatively Motion for Leave to File Verified Complaint, previously filed, there is no mechanism that allows for filing a complaint in response to an order to show cause.  It is not recognized procedure, as Strojnik admits, but ignores. The pending action seeks to compel compliance with an investigative demand and to hold Respondent in contempt for failing to comply with the court order, neither of which allows for a response in the form of a complaint.  A complaint is not a responsive pleading; it starts an action, it does not defend against an action.  Respondent's attempt to file a Verified Complaint, as part of the pending action, is without known precedent.

The allegations set forth in the Verified Complaint, including the prayer for relief, are also unwarranted and frivolous and not supported by the facts. Respondent appears to allege that North Dakota's investigation of Respondent's business practices is a violation of 1st Amendment rights, and a violation of the All Writs Act, 28 U.S.C. § 1651 and the Anti-Injunction Act, 28 U.S.C. § 2283.

1.    RESPONDENT'S CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

In 1795, Congress ratified the Eleventh Amendment, which reads: "[T]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., Amend. XI. North Dakota is a sovereign State of the United States of America, admitted to the Union on November 2, 1889. The doctrine of sovereign immunity prevents Respondent from forcing North Dakota into a coercive proceeding before this Court. North Dakota does not consent to participate in the proceeding and North Dakota's immunity is neither waived, nor abrogated by Congress; the Verified Complaint is not warranted by law.

The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). "The Eleventh Amendment bars a citizen from bringing suit for monetary damages against a state in federal court. Barnes v. State of Mo., 960 F.2d 63, 64 (8th Cir. 1992) (citing Welch v. Texas Dep't of Hwys. & Public Transp., 483 U.S. 468, 472 (1987)). "When a state is directly sued in federal court, it must be dismissed from litigation upon its assertion of Eleventh Amendment immunity unless one of two well-established exceptions exists." Barnes, 960 F.2d at 64.

> The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by "clear and unmistakable language…. Second, a state may waive its immunity to suit in federal court, but "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction.

Id. at 64-65.    Neither exception is applicable in the present case.    The Eleventh Amendment would demand dismissal of the Verified Complaint.

The central purpose of the doctrine sovereign immunity is to accord the States the respect owed to them as joint sovereigns.  The doctrine is enforced regardless of whether the action seeks monetary damages or some other type of relief.  <u>Seminole Tribe of Fla. v. Florida</u>, 517 U.S. 44, 58 (1996); <u>Cory v. White</u>, 457 U.S. 85, 90 (1982).  The doctrine of sovereign immunity "serves to avoid 'the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.'"  <u>Seminole Tribe</u>, 517 U.S. at 58 (quoting <u>Puerto Rico Aqueduct & Sewer Author. v. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 146 (1993)).  <u>See also</u> <u>Idaho v. Coeur d'Alene Tribe</u>, 521 U.S. 261, 287-88 (1997)("The dignity and status of its statehood allow Idaho to rely on its Eleventh Amendment immunity and to insist upon responding to these claims in its own courts, which are open to hear and determine the case.").[5]

Respondent's suit against North Dakota is, on its face, barred by the Eleventh Amendment; North Dakota has sovereign immunity.

---

[5]  In <u>Coeur d'Alene</u> the Court flatly rejected any notion that State courts are inadequate to enforce and interpret federal law.  "Interpretation of federal law is the proprietary concern of state, as well as federal, courts.  It is the right and duty of the States, within their own judiciaries, to interpret and to follow the Constitution and all laws enacted pursuant to it, subject to a litigant's right of review in this Court in a proper case."  <u>Coeur d'Alene</u>, 521 U.S. at 276.

2.    THERE HAS BEEN NO VIOLATION OF RESPONDENT'S FIRST AMENDMENT RIGHTS.

The issuance of an investigative demand does not unduly restrict or force Respondent to give up its 1st Amendment rights, as alleged by Respondent. Even if the "live activation" or "promotional checks," were considered protected speech, North Dakota is not prevented from investigating Respondent's business activities. The 1st Amendment may protect speech; however, it does not make Respondent immune from investigation. North Dakota is investigating Respondent's business activities based on the suspicion that they are utilizing deceptive and unfair sales practices. This investigation is not limiting their right to speech. North Dakota is merely requiring Respondent provide information to aid in the investigation. There are current limitations placed on Respondent's business and thus "speech" in North Dakota, however, the limitations comes from Respondent's failure to comply with the investigation, which prompted an injunction. Thus, Respondent's argument, that North Dakota's investigation unduly restricts or forces Respondent to give up its 1st Amendment rights, is unwarranted.

Respondent's commercial speech, if found deceptive, is not protected speech under the 1st Amendment. "The (federal) Constitution accords less protection to commercial speech than to other constitutionally safeguarded forms of expression." Bolger v. Youngs Drug Products Corp., 463 U.S. 60, 64-65 (1983). Deceptive speech is not protected by the 1st Amendment. "[T]here is no constitutional value in false statements of fact." Gertz v. Robert Welch, Inc., 418 U.S. 323, 340 (1974). Commercial speech that is false or misleading is not entitled to First Amendment protection and "may be prohibited entirely." Zauderer v. Office of Disciplinary Counsel, 471 U.S. 626, 638 (1985).

3.    THERE HAS BEEN NO VIOLATION OF THE ALL WRITS ACT, 28 U.S.C. §
      1651, LIMITED IN APPLICATION BY THE ANTI-INJUNCTION ACT, 28
      U.S.C. § 2283

Respondent alleges that North Dakota and the District Court of the State of North

Dakota are "mounting an illegal collateral attack on the District Court Judgment and Order

in violation of the All Writs Act 28 U.S.C. §1651, and the Anti Injunction Act 28 U.S.C.

§2283."

The All Writs Act, 28 U.S.C. § 1651, allows federal courts to "issue all writs

necessary or appropriate in aid of their respective jurisdictions and agreeable to the

usages and principles of law."  It is limited in application by the Anti-Injunction Act, 28

U.S.C. § 2283, which is an absolute prohibition against any injunction of any State-court

proceedings unless the injunction falls within one of three specifically-defined exceptions in

the Act.  28 U.S.C. § 2283.  See also Vendo Co. v. Lektro-Vend Corp., 433 U.S. 623, 630

(1977); Fielder v. Credit Acceptance Corp., 188 F.3d 1031, 1035 (8th Cir. 1999)("[t]he Anti-

Injunction Act specifically prohibits injunctions interfering with the enforcement of state

court judgments").

Rooted firmly in constitutional principles, the Act is designed to prevent

unnecessary friction between federal and state courts.  Entergy, Arkansas, Inc. v.

Nebraska, 210 F.3d 887, 900 (8th Cir. 2000).  The Act maintains the equal dignity of the

state and federal courts.  Id.  The Supreme Court has "expressly rejected the view that the

anti-injunction statute merely states a flexible doctrine of comity, and [has] made clear that

the statute imposes an absolute ban upon the issuance of a federal injunction against a

pending state court proceeding, in the absence of one of the recognized exceptions...."

Mitchum v. Foster, 407 U.S. 225, 228-29 (1972) (emphasis added).

The exceptions written into the Anti-Injunction Act allow federal courts to grant an injunction staying State court proceedings when (1) specifically authorized by Congress, (2) necessary to aid the federal court's jurisdiction, or (3) necessary to protect or effectuate the federal court's "judgments." NBA v. Minnesota Prof. Basketball, Ltd. P'ship, 56 F.3d 866, 871 (8th Cir. 1995). These exceptions "are designed to ensure the effectiveness and supremacy of federal law." Chick Kam Choo v. Exxon Corp., 486 U.S. 140 (1988). Courts must construe the exceptions to the Anti-Injunction Act narrowly and resolve doubts in favor of letting the state action proceed. Kansas Publ. Empl. Ret. Sys. v. Reimer & Koger Assoc., Inc. 77 F.3d 1063, 1068 (8th Cir. 1996). "Any doubts as to the propriety of a federal injunction against State court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." Jones v. St. Paul Cos., Inc., 495 F.3d 888, 893 (8th Cir. 2007).

The first exception is inapplicable. An injunction is not specifically authorized by Congress. The second exception, "necessary to aid the federal court's jurisdiction," authorizes injunctive relief "to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." Atlantic Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 295 (1970). "Parallel in personam actions in state court seriously impede a federal court's ability to adjudicate a case only where the state court proceeding threatens to 'render the exercise of the federal court's jurisdiction nugatory.'" Bennett v. Medtronic, Inc., 285 F.3d 801, 806 (9th Cir. 2002) (quoting Winkler v. Eli Lilly Co., 101 F.3d 1196, 1202 (7th Cir. 1996). This exception is also inapplicable, as the federal case has already been adjudicated and was decided seven years ago.

The third exception authorizes a federal court to issue those orders that are "necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." United States v. N.Y. Tel. Co., 434 U.S. 159, 172 (1977). This exception is also what is often called the "relitigation exception" in the Anti-Injunction Act. 28 U.S.C. § 2283. The "relitigation exception" rests upon the "well-recognized concepts of res judicata and collateral estoppel. Under res judicata a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. Montana v. U.S., 440 U.S. 147, 153 (1979). An injunction is justified when necessary to "enjoin a state court from litigating claims and issues that the district court has already decided." NBA v. Minnesota Prof. Basketball, Ltd. P'ship, 56 F.3d 866, 872 (8th Cir. 1995). In order to enjoin a State court from relitigating an issue, the issue must "actually have been decided by the federal court." In re SDDS, Inc., 97 F.3d 1030, 1038 (8th Cir. 1996).

In order to succeed under the All Writs Act and the Anti-Injunction Act, Respondent must show that North Dakota's investigation interferes with or threatens the FTC Consent Judgment. It simply does not. North Dakota's investigation is not attempting to enforce, invalidate or interfere with the terms of the FTC Consent Judgment. North Dakota's action is not premised on any claim under the terms of the FTC Consent Judgment. North Dakota's discovery addresses activities that have occurred subsequent to the FTC action. North Dakota was not a party and did not participate in the FTC action. The FTC case made no determination on the merits and nothing in the Judgment and Order indicates that any matter of North Dakota law or fact was decided. North Dakota's investigation is not an attempt to relitigate any possible cause of action the FTC might have had seven

years ago. North Dakota is simply trying to investigate violations of North Dakota law. Accordingly, an injunction is not necessary to preserve the res judicata effect of the FTC Consent Judgment.

Respondent's argument under the All Writs Act and, in fact, the entire Verified Complaint, is premised on a deliberate misreading of the FTC Consent Judgment. In paragraph 11 of the Verified Complaint, Respondent erroneously asserts that the Court issued "a specific decree permitting Plaintiff to market its services in accordance with specifically decreed instructions." (Verified Compl. ¶ 11.) In doing so, respondent mischaracterizes the FTC Consent Judgment as affirmatively granting rights rather than prohibiting certain conduct. The FTC Consent Judgment shows that the prior order does not grant Respondent any affirmative rights; rather, it prohibits Respondent from engaging in further violations of federal law. See Verified Complaint at Exhibit 2. The FTC Consent Judgment does not, as Respondent attempts to assert, excuse Respondent from all past and future violations of State law.

Nothing in the All Writs Act defends the Respondent's failure to comply with the Court's Order to Compel. The power conferred by the All Writs Act "is meant to be used only in the exceptional case where there is clear abuse of discretion or 'usurpation of judicial power.'" Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 383 (1953). The purpose of the All Writs Act is "to protect courts and not parties." In re Convertible Rowing Exerciser Patent Litig., 616 F. Supp. 1134. 1139 (D. Del. 1989). Respondent merely seeks to shield itself from investigation of possible violations of North Dakota law. The All Writs Act does not support the creation of a "safe harbor" for Respondent so as to allow Respondent to use the FTC Consent Judgment to avoid any investigations or enforcement

16

of State law violation.  There is no basis for relief under the All Writs Act.  There is simply no credible argument for a need to issue an injunction against North Dakota's investigation merely because of a seven-year-old, out-of-state, consent judgment that dictates certain limits on Respondent's advertising and solicitation practices pursuant to federal law.

Respondent's complaint requests a "declaration that the District Court Judgment and Order entered in this Court is a legal judgment binding on Defendants."  (Verified Compl. at 6.)  First, North Dakota is uncertain which "District Court Judgment and Order entered in <u>this</u> Court" (emphasis added) Respondent is referring to.  Second, if Respondent is referring to the FTC Consent Judgment, there is no authority for making the FTC Consent judgment binding on North Dakota.  North Dakota was not a party to the consent judgment, nor a party in interest, and is therefore not bound by its terms.  North Dakota's action does not reference nor build its case on the existing FTC Consent Judgment.  The FTC Consent Judgment does not impose any obligations upon North Dakota, nor does it grant North Dakota any rights.

Respondent's intentional misreading of the FTC Consent Judgment goes so far as to imply that as long as Respondent comply with the FTC Consent Judgment, which restrained Respondent from making certain misstatements, Respondent is immune from liability for violation of any other law.  Respondent appears to make the assertion that the FTC Consent Judgment requires Respondent to do business exactly the way it does and that additional State restriction in Respondent's conduct would directly conflict with the FTC Consent Judgment.  This is preposterous.

Even if Respondent was not mischaracterizing the terms of the consent judgment, Respondent's argument would still fail as a matter of law, because Respondent

misunderstands the legal effect of a federal consent judgment. Respondent reasons that if the consent judgment authorizes Respondent's activities, the effect would be to deny the State of North Dakota its authority to investigate Respondent under State law for those activities that are allegedly authorized by the consent judgment. That is not the law. The FTC Consent Judgment was a consent judgment, entered upon stipulation between Respondent and others with the Federal Trade Commission.  In the consent judgment, the parties agreed "to settle this action without adjudication or admission of any issue of fact or law." Federal Trade Commission v. Simple Access, Inc., et al., Case No. CV-01-803, (D. Ariz. July 30, 2001).  Through the entry of the consent judgment, Respondent avoided litigation with the FTC so the case was not tried on its merits.

Since a consent judgment is "a contract to end a lawsuit in which the parties agree[d] to the relief to be provided by the judgment and the wording to effectuate that relief," New York v. Saint Francis Hosp., 289 F. Supp. 2d 378, 384-85 (S.D.N.Y. 1993) (citations omitted), a consent decree is usually construed to bind only the consenting parties. See Keith v. Volpe, 188 F.3d 1386, 1392 n. 9 (9th Cir. 1997).  The terms of the FTC Consent Judgment should be construed and interpreted as a contract between Respondent and the FTC.  North Dakota was not a party to the consent judgment, nor a party in interest, and is therefore not bound by its terms.

Respondent's Verified Complaint further requests "a declaration affirming that Plaintiff's compliance with the terms of the District Court Judgment and Order is not, and cannot be, illegal." North Dakota has not, at any point, argued that compliance with the FTC Consent Judgment is illegal.   North Dakota is merely investigating whether Respondent's business conduct is in violation of North Dakota law.  This is yet another of

Respondent's allegations premised on the misreading of the terms of the FTC Consent Judgment.   Respondent ignores the fact that its conduct can be in violation of North Dakota law even if it is in compliance with the FTC Consent Judgment.

The FTC Consent Judgment does not prevent North Dakota from having additional statutory requirements or a stricter standard in order to protect against consumer fraud. Federal law does not preempt state law in the area of consumer protection.  Courts will not infer preemption and always presume Congress did not intend to displace State law unless Congress does so clearly and unmistakably.  Gregory v. Ashcroft, 501 U.S. 452, 460 (1991).  Consumer protection laws enjoy a great presumption against preemption. Black v. Financial Freedom Sr. Funding Corp., 92 Cal. App. 4th 917, 926 (Cal. Ct. App. 2001).   See also SPGGC, Inc. v. Blumenthal, 408 F.Supp. 2d 87, 92 (D. Conn. 2006)("One historic police power is consumer protection, which is an area traditionally regulated by the states")(citing Cliff v. Payco General American Credits, Inc., 363 F.3d 1113, 1125 (11th Cir. 2004); Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 135 (1963).

It is simply not a defense to a State agency's action that Respondent has entered into a similar consent agreement with a federal agency.  A federal consent judgment does not prevent North Dakota from investigating violation of its own consumer fraud statutes. Consumer Protection Div. v. Consumer Publishing Co., 304 Md. 731, 501 A.2d 48 (1986). In Consumer Publishing Co., the company contended that the Maryland Consumer Protection Division was without authority to initiate cease and desist order proceedings against it because "[s]ix weeks prior to the filing of the charges the Company entered into a valid, binding and enforceable Compromise Agreement with the United States Postal

Service covering the precise practices complained of by the Division." 501 A.2d at 63. The court rejected the argument and stated:

> Because the compromise agreement does not cover all of the practices complained of and the remedies sought by the Division, the Company's argument that the existence of that agreement barred this proceeding is untenable. … Even if the agreement did cover the practices complained of and the remedies sought by the Division, the existence of the agreement would not necessarily bar the Division from proceeding.

Id. Respondent's argument that the FTC Consent Judgment prevents North Dakota from investigating and enforcing its consumer protection law is incredible and without any cited support.

## V.    RESPONDENT IS UNREASONABLEY AND VEXATIOUSLY MULTIPLYING PROCEEDINGS, CONTRARY TO 28 U.S.C. § 1927.

Respondent's counsel failed to cure the impermissible removal of the case to the United States District Court, despite being put on explicit notice that Respondent's removal was frivolous and jurisdictionally insupportable and despite full knowledge of the facts which defeat federal jurisdiction, and thus removal. Additionally, Respondent's counsel failed to cure the defects in the Verified Complaint, despite repeatedly being put on explicit notice that Respondent's claims were frivolous and insupportable. Rather than recognizing the objectively obvious deficiencies and taking appropriate steps to comply with the State court's orders in this matter, Respondent's counsel intentionally and knowingly multiplied the proceedings in this case, hoping to muddy the water and frustrate North Dakota's efforts. Further, Respondent's counsel also failed to recognize the objectively obvious deficiencies in the Verified Complaint and did not take appropriate steps to dismiss the complaint. 28 U.S.C. § 1927 warrants sanctions when an attorney's conduct "viewed objectively, manifests either intentional or reckless disregard of the

attorney's duties to the court." <u>Tenkku v. Normandy Bank</u>, 348 F.3d 737, 743 (8th Cir. 2003). The actions by Respondent and its counsel are both unreasonable and vexatious. Respondent's counsel should be required by the Court to personally satisfy the excess costs, expenses, and attorneys' fees reasonably incurred by North Dakota as a result of this conduct.

## CONCLUSION

Strojnik and Respondent have previously been put on notice of the defects in the prior complaint against North Dakota, through motions to dismiss and motions for sanctions. The previous complaint, which was dismissed by the Arizona court, asserted substantially the same allegations and requested to a large extent the same relief as the present Verified Complaint. However, Strojnik has continued to ignore the defects of his claims. Strojnik's recent filings and filing-attempts are baseless and frivolous. An objectively reasonable and competent attorney would not believe in the merit of his arguments. Strojnik has shown a pattern of improper conduct in this matter through numerous frivolous filings.

Respondent's removal of this action is objectively unreasonable. So is the attempted filing of the Verified Complaint, both due to how the Verified Complaint is "filed" and the baseless allegations contained in the Verified Complaint. Respondent has no basis in law or fact for its action, and Respondent's filings are interposed for multiple improper purposes. Respondent is intentionally misreading and misrepresenting to this court the facts and the content of the FTC Consent Judgment in an attempt to create and support a factual basis for its claims. Respondent's conduct, during multiple actions in various jurisdictions, has been characterized by baseless and frivolous filings. Sanctions,

including reasonable attorney's fees, should be imposed against Respondent's counsel,

Peter Strojnik, and Respondent.

      Dated this 22nd day of January, 2008.

                                    **STATE OF NORTH DAKOTA**
                                    Wayne Stenehjem
                                    Attorney General

By:     /s/ Elin S. Alm
                                    Elin S. Alm
                                    Assistant Attorney General
                                    Office of the Attorney General
                                    Consumer Protection & Antitrust Division
                                    4205 State Street
                                    PO Box 1054
                                    Bismarck, ND  58502-1054
                                    (701) 328-5570 (telephone)

                                    Attorneys for Petitioner
                                    State of North Dakota

G:\CPAT\Multi\Simple.Net\Removal\ND Rule11 - BrfSupportND.doc